## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

ANTHONY CARTER                                                PLAINTIFF

V.                          NO. 3:13CV00214 JTR

CAROLYN W. COLVIN,                                        DEFENDANT
Acting Commissioner,
Social Security Administration

## MEMORANDUM AND ORDER

## I. Introduction

Plaintiff, Anthony Carter ("Carter"), has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Both parties have filed Appeal Briefs, *Docs. 13, 14*, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

---
[1]*Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On September 14, 2010, Carter protectively filed an application for DIB, alleging disability since February 26, 2010. (Tr. 137-38, 171.) In his Disability Report-Adult, he stated that he was disabled because of left arm and shoulder problems, left hand numbness, and neck problems and pain. (Tr. 175.) After his claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ").

On July 13, 2012, the ALJ conducted an administrative hearing, where Carter and a vocational expert testified. (Tr. 38-88.) At the time of the hearing, Carter was forty-nine years old and had completed the twelfth grade. (Tr. 42.) He had past relevant work as a crane operator, crane helper/slitter operator helper, and ship loader. (Tr. 76-77, 176, 182-85.)

In his August 9, 2012 decision, the ALJ found that Carter: (1) engaged in substantial gainful activity from his alleged onset date until June 26, 2010, but had not engaged in substantial gainful activity since that time; (2) had "severe" impairments

consisting of degenerative disc disease of the cervical spine; left shoulder impingement, status post decompression; bilateral carpal tunnel syndrome; foot pain, status post surgery; depression; and substance abuse; (3) did not have an impairment or combination of impairments meeting a Listing; (4) had the residual functional capacity ("RFC") to perform a modified range of light work, which precluded him from performing his past relevant work; but (5) could perform other work existing in significant numbers in the national economy, with examples being a security guard, inventory clerk and telephone sales representative. (Tr. 12-30.) Accordingly, the ALJ concluded that Carter was not disabled. *See* 20 C.F.R. § 404.1520 (explaining the sequential evaluation process).

On September 16, 2013, the Appeals Council denied Carter's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-6.) Carter then filed his Complaint appealing that decision to this Court. *Doc. 2*.

In Carter's Appeal Brief, he argues that the ALJ erred: (1) in assessing an RFC that failed to adequately take into account Carter's restricted ability to stand/walk, or his mental limitations; (2) in discounting Carter's credibility; and (3) in relying on vocational expert ("VE") testimony that identified jobs beyond Carter's reasoning ability.

For the reasons discussed below, the Court concludes that Carter's arguments

are without merit.

## II. Discussion

### A.    The ALJ's RFC Assessment

The ALJ found that, physically, Carter: (1) could perform work at the light exertional level;[2] (2) could perform frequent handling and fingering with the upper extremities; (3) was unable to perform continuous overhead reaching with the non-dominant upper extremity; and (4) could stand and/or walk for six hours of an eight-hour workday. (Tr. 18, 22, 23, 26.) Regarding Carter's mental RFC, the ALJ found that he: (1) could understand, follow, remember, and carry out detailed instructions; (2) could respond to changes within the workplace; and (3) could interact with coworkers, supervisors, and the general public on a frequent basis. (Tr. 18, 27.)

The Court concludes that the ALJ's RFC assessment is adequately supported by the medical evidence and that the ALJ did not err in making that determination.[3]

First, the ALJ thoroughly discussed the medical evidence regarding Carter's

---

[2]Light work activity involves lifting objects weighing up to twenty pounds at a time, and frequently lifting or carrying objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b).

[3]RFC is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his or her physical and mental limitations. 20 C.F.R. § 404.1545(a)-(c). "[B]ecause RFC is a medical question, *some medical evidence* must support" that determination. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (emphasis added).

surgery on both feet in 2011 for excision of plantar fibromas, his physical therapy, and his follow-up treatment. (Tr. 22, 24, 682-84, 743-87, 878-91.) The ALJ noted that, at his last visit to the podiatrist on April 26, 2012, Carter's only complaint was left foot tightness and pain "with long periods of ambulation," with no complaints regarding his right foot. (Tr. 878). A corticosteroid injection was administered in the left foot, providing "good relief." (Tr. 878.) The ALJ also noted Carter's hearing testimony that the surgery helped, and he was able to "stand a little." (Tr. 19-20, 63-65.) The ALJ expressly accounted for Carter's foot problems and related limitations by restricting the RFC to "standing and/or walking for six hours of an eight-hour workday, as required in light exertional work." (Tr. 22.)

Second, the ALJ properly evaluated Carter's mental impairments and determined that he had minimal limitations in functioning. As the ALJ discussed in his decision, this RFC assessment is supported by: (1) the report of Mary Ellen Ziolko, Ph.D., who performed a consultative mental diagnostic evaluation on May 10, 2011 (Tr. 17, 24, 27, 617-22); (2) Carter's longitudinal course of mental health treatment for depression and substance abuse, including medication management, therapy sessions, attendance of support groups, and completion of a substance abuse treatment

program (Tr. 16-17, 23-24, 27);[4] (3) Carter's three inpatient admissions in 2011, during which his depression and anxiety symptoms were stabilized (Tr. 17-18, 23);[5] (4) Global Assessment of Functioning scores assigned by various treatment providers (Tr. 17-18, 23-24); (5) the opinions of the state agency psychological consultants, who reviewed Carter's mental health records (Tr. 28); and (6) Carter's statements, to his health care providers and in the administrative proceedings, regarding his activities, limitations and relationships (Tr. 16-17, 19, 20).

While acknowledging Dr. Ziolko's finding that Carter had difficulty sustaining concentration and persistence, the ALJ also noted her findings that Carter could communicate and interact in a socially adequate manner, cope with typical mental and cognitive demands of basic work-like tasks, and complete work-like tasks within an acceptable time frame. (Tr. 17, 27, 621.) The ALJ stated that he was affording "great weight" to Dr. Ziolko's opinions, as they were based upon her "examination signs and findings." (Tr. 27-28.) Finally, the ALJ expressly stated that he based his mental RFC

─────────────────

[4]On April 10, 2012, Carter reported that his symptoms had improved as he had been clean from alcohol and illicit drugs for almost five months, was regularly attending support meetings, and was working diligently with his therapist. (Tr. 829.) On July 12, 2012 , he successfully completed a substance abuse treatment program. (Tr. 249.)

[5](1) January 18 to January 26, 2011: treatment for an "acute depressive episode," anxiety, and suicidal ideation (Tr. 459-63); (2) June 7 to June 10, 2011: treatment for depression and anxiety after Carter reportedly "attempted to kill himself with mass amount of cocaine" (Tr. 662-63); and (3) November 16 to November 29, 2011: treatment for cocaine dependence and depression (Tr. 822-26).

assessment not only on Dr. Ziolko's findings, but also "the longitudinal record." (Tr. 27.)

### B.    The ALJ's Credibility Assessment

The Court concludes that the ALJ properly evaluated Carter's credibility consistent with the Eighth Circuit's holding in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

The ALJ cited *Polaski* and the applicable regulations and rulings. (Tr. 18, 24.) Moreover, he identified several inconsistencies between the objective record and Carter's subjective complaints of disabling pain and limitations: (1) following a work injury and left shoulder surgery in August 2010, Carter "recovered through therapy," and a functional impairment evaluation on January 5, 2011 showed full range of motion and an impairment rating of 3% of the upper extremity (Tr. 24, 26-27, 930-36); (2) following bilateral foot surgery in April and June 2011, Carter told his podiatrist in April 2012 only that he had left foot pain with long periods of ambulation (Tr. 24, 878); (3) following an anterior cervical discectomy in May 2011, the neurosurgeon released Carter to "light duty" work on September 16, 2011 (Tr. 24-25, 791); (4) following carpal tunnel release surgery in February 2012, the neurosurgeon observed that Carter had full range of motion in all fingers, and good strength (Tr. 24, 893-94); (5) Carter's testimony regarding right shoulder pain and lumbar pain was not

supported by a diagnosis or any medical evidence (Tr. 24-25); (6) an occupational therapist found that Carter exhibited "blatant symptom magnification" and "sub maximal effort" throughout a functional evaluation (Tr. 26, 933, 935-36); and (8) Carter was able to maintain his activities of daily living, such as taking care of his personal needs, teaching golf, mowing the lawn, driving, and attending church and frequent support group meetings (Tr. 16-17, 24).

The ALJ expressly considered Carter's termination from employment in November 2011 because he came to work under the influence of his prescription medications, as well as the plant physician's opinion that "the combination of claimant's current medications impaired his ability to work safely." (Tr. 25, 159.) The ALJ further stated that, in assessing Carter's credibility, he had considered these adverse effects of his medications but gave "determinative weight" to other evidence: (1) Carter was no longer taking the number and combination of medications that he was taking in November 2011 (Tr. 25, 239, 817); (2) it was his treating physician's opinion that Carter could continue to take Tramodol "as prescribed on an as needed basis for neck pain away from his work timings to relieve his discomfort intermittently" (Tr. 25, 816); and (3) Carter denied any adverse side effects from his psychotropic medications (Tr. 25, 829).

### C.    The ALJ's Reliance on VE Testimony

Finally, Carter argues that the three jobs identified by the VE[6] involve level 3 reasoning, which exceeds the ALJ's RFC finding that Carter could only perform work involving the ability to understand, remember and follow "detailed" instructions. (Tr. 18, 27.)

As defined by the Dictionary of Occupational Titles ("DOT"), level 3 reasoning requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." In contrast, level 2 reasoning requires the ability to "[a]pply commonsense understanding to carry out *detailed but uninvolved* written or oral instructions." *DOT*, app. C, 1991 WL 688702 (4th ed. rev. 1991). According to Carter, level 3's higher classification requires "at the very least, the ability to follow *more than detailed* instructions." *Doc. 13, at 20.*

DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). DOT descriptions "may not coincide in every respect with the content of jobs as performed in particular establishments,"[7] and "not

---

[6]Security guard (DOT 372.667-030); inventory clerk (DOT 216.482-022); and telephone sales representative (DOT 299.357-014). (Tr. 29, 84-86.)

[7]For example, while the Social Security regulations generally only differentiate between jobs involving "simple" instructions and those involving "detailed" ones, the DOT's reasoning scale is more graduated, consisting of six levels. *Harris v. Astrue*, 2012 WL

all of the jobs in every category have requirements identical to or as rigorous as those listed in the [DOT]." *Id.*

The Eighth Circuit has held that a DOT reasoning level of 3 is not inconsistent with the ability to perform work that is "simple" or limited to understanding, remembering and following "simple, concrete" instructions. *Welsh v. Colvin*, 765 F.3d 926, 929-30 (8th Cir. 2014) (ALJ properly relied on VE's opinion that there was "no inconsistency" between DOT's requirement of level 3 reasoning capability and RFC limited to "simple, routine, repetitive work"); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 366-67 (8th Cir. 2007) (DOT's description of job as involving level 3 reasoning was not inconsistent with limitation to following "simple, concrete" instructions).

Thus, jobs requiring level 3 reasoning are not inconsistent with the more expansive RFC assessment here, limiting Carter to work involving "detailed" instructions. In addition, Carter's past job as a crane operator is classified as "semi-skilled" (Tr. 76), indicating the ability to perform work that is "more complex" than the "simple duties" involved in unskilled work.[8]

At the administrative hearing, the ALJ posed a hypothetical question

---

5036009, *4-*5 (E.D. Ark. Oct. 17, 2012); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983-84 (C.D. Cal. 2005).
.

[8]20 C.F.R. § 404.1568(a) & (b) (defining skill requirements).

encompassing the exertional and nonexertional limitations described in Carter's RFC, and the ALJ asked the VE to advise of any inconsistencies with the relevant DOT job descriptions. (Tr. 76, 84.) In his decision, the ALJ expressly determined, as required by the Social Security rulings,[9] that the VE's testimony was consistent with the DOT and explained his decision to credit the VE's testimony that a person with the described RFC could perform the three identified jobs. (Tr. 29.)

Accordingly, the Court concludes that the ALJ properly relied on the VE's testimony.

### III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.

---

[9]*Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Carter's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 23rd day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE